IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOGESH PATEL, : | CIVIL ACTION |
| Plaintiff, : | |
| : | No. 10-1383 |
| v. : | |
| : | |
| HAVANA BAR, RESTAURANT AND : | |
| CATERING, et al. : | |
| Defendants. : | |

**Goldberg, J.**                                                                                                           December 2, 2011

**Memorandum Opinion**

This case involves injuries sustained by Plaintiff, Yogesh Patel, when he fell from a balcony/loft-type structure at a Bucks County, Pennsylvania bar and restaurant.

Presently before the Court are cross motions for sanctions related to a series of alleged discovery violations. Plaintiff alleges spoliation of evidence, failure to produce initial disclosures in compliance with FED. R. CIV. P. 26 and "unethical conduct" by Defendants' attorneys regarding scheduling and conducting depositions. Defendants counter that Plaintiff, his family and Plaintiff's counsel have engaged in a sanctionable pattern of discovery abuse, including spoliation of evidence, failure to produce initial disclosures and omission of evidence in the production of documents. Defendants urge that Plaintiff's discovery violations have been so egregious that dismissal of Plaintiff's entire case is warranted.

From our perspective, the discovery process in this case and the exchange of information leading up to the filing of these motions has been disorganized and confusing. For instance, Plaintiff's sister-in-law solicited and apparently received witness statements that now cannot be located. Additionally, Plaintiff's production of other witness statements was undertaken in a

piecemeal fashion, such that depositions occurred without the deposing attorney having possession of documents, which in the normal course, should have been available well before depositions were even scheduled.

Defendants have also played a part in disrupting the exchange of information. Despite a three week opportunity to preserve evidence, Defendants allowed video surveillance footage of the night in question to be recorded over and erased.

## I. Factual Background

On September 8, 2007, Plaintiff, Yogesh Patel, attended an engagement party at the Havana Bar & Restaurant ("Havana"), where he fell from a second floor balcony/loft, severely injuring himself. Plaintiff initiated suit in the United States District Court for the District of New Jersey on September 4, 2009. The case was transferred to this District on March 29, 2010.

Plaintiff's complaint raises a variety of negligence claims, including: failure to properly maintain the premises and supervise Plaintiff (Count I); and failure to warn Plaintiff of hazardous conditions and rectify those conditions (Counts II and III). What is unclear from the complaint is whether Plaintiff is alleging that: (1) his fall was the result of some hazardous condition at the bar, (2) his fall was due to Havana's staff continuing to serve him alcohol, knowing he was intoxicated; or (3) both of these theories.[1] Our review of the evidence gathered thus far, particularly statements made by Plaintiff's sister-in-law, Sruti Patel, seems to reflect that initially Plaintiff was claiming, at least in part, that his fall was due to hazardous conditions on the premises. However, as the case has progressed, it appears that Plaintiff has shifted course and now seems to be alleging that Havana's

---

[1] At the sanctions hearing held on these motions, Plaintiff's counsel acknowledged that at the time the complaint was filed he was unaware as to whether Plaintiff would in fact be pursuing a hazardous condition claim. (Feb. 22, 2011 Sanctions Hr'g. Tr. 6-7.)

2

staff continued to serve him alcohol while he was visibly intoxicated, which led to his fall.  (Compl. ¶¶ 13, 14, 17, 21; Pl.'s Opp'n to Defs.' Mot. for Sanctions & Pl.'s Cross-Mot. for Sanctions 4.)  As explained in greater detail, infra, these differing theories of liability directly relate to the discovery disputes before the Court.

### A.  Video Footage

In the early hours of September 9, 2007, Havana's owner, Mark Stevens, watched video surveillance footage recorded near the time of Plaintiff's fall.  At the time, Havana had three video surveillance cameras on the second floor.  These cameras operated continuously and recorded to a computerized video recording system.  Because the video and inventory systems were connected, the video also captured every drink order by superimposing sales data onto the video.  The system was programmed to automatically record over existing footage every three weeks.  (Stevens Aff. 1, 2; Pl.'s Supplement to Pl.'s Cross-Mot. for Sanctions 3, 4.)

At his deposition, Stevens testified that when he reviewed the footage, he observed Plaintiff standing at the railing, but because of a delay in the recording, he was unable to observe how the fall occurred.  Stevens explained that he attempted to copy the video shortly after the incident, but was unable to do so given the unavailability of appropriate equipment, and despite a service call to the system's provider.  Stevens also stated that the system had the capability to print still images of recordings, but he never printed any images.  Thus, no footage of the night in question was preserved prior to the system's automatic erasure of the recording.  (Stevens Dep., Feb. 16, 2011 31:2-19; Stevens Aff. 2; Pl.'s Supplement to Pl.'s Cross-Mot. for Sanctions 13; see Defs.' Resp. in Opp'n to Pl.'s Cross-Mot. for Sanctions 3.)

B. **Witness Statements**

On September 5, 2008, one year after the incident, Plaintiff's sister-in-law, Sruti Patel, sent a Facebook message to persons who attended the engagement party at Havana, requesting that the recipients compose a statement recounting their recollection of the incident and generally describing Plaintiff. In this message, Sruti Patel challenged the accuracy of the police report in that it described Plaintiff as being intoxicated. The message implied, if not directly requested, that the statements confirm that Plaintiff was not intoxicated. The message stated:

> . . . Yog and my Dad had a sit down with the lawyer yesterday . . . . The lawyer is pretty positive about the case, but now he needs a little help from all of us. He has basically asked for a list of names and contact info from each of Yog's friends that were present that night and that would be willing to testify on his behalf. Before having to testify he is asking that each of you provide a brief statement on your account of the night and a little bit more info on the Yogi that you all know.
>
> He's basically saying that the police report doesn't really paint a wonderful picture considering the police interviewed no one that was with us or around us the whole night. As we all know, or most of us at least, the reports that were taken all basically said that Yog was practically wasted and was doing acrobatics when he fell, which we all know is complete BS!
>
> Anyway the lawyer would like for us to gather statements that paint a more realistic picture of who Yog is and how he always acts at parties whether he's drunk or not because at the end of the day we all know Yog. He's an entertainer, a hyper guy who acts all wild and crazy without being drunk cause that's just the type of guy he is, which we all know is completely true! So I'm just trying to get everyone to write up something talking about what little or lot they did see that night and then make mention of the fact that yes Yog may have been running around acting crazy and to a stranger he may have seemed drunk, which is the people interviewed by the police made those statements, but people who know him know that he's just a crazy kind of guy and the way he was acting was no reflection of him being wasted that night.
>
> . . . .
>
> We're not asking for anyone to lie or give false accounts of the night or Yog

> in general.  We're just asking that everyone give accurate accounts of the night because we all know he drank, but we all also know he did not drink enough to be wasted by that point and we all know that the kid is always acting crazy even when he's sober because he just loves being the life of the party.
>
> Anyway, pass this along to whomever I didn't include on this email and within the next two-three weeks get back to me with your statement and contact information so that if and when the lawyer must contact you he has a means to do so.
>
> The lawyer is also going to be placing this case into motion with the court within 8 weeks so we should have all the info we need by then and keep those fingers crossed!"

Facebook Message from Sruti Patel (Sept. 5, 2008) (available in Defs.' Mot. for Sanctions Ex. P) (emphasis added).

Approximately two years later, on August 21, 2010, Sruti Patel sent another message to the guests of the engagement party.  Contrary to the request made in her September 2008 message, which sought descriptions that Plaintiff was not intoxicated, Sruti Patel made a new request of persons who may have witnessed the events on the night in question.  This message stated:

> There is one slight change in direction in terms of how the lawyer is approaching the case.  We are now trying to collect statements that would indicate that Yog had too much to drink in order to shed some light on the fact that the bartender recklessly continued to serve him drinks despite the fact that he was visibly intoxicated.  All statements that accuse him of jumping will not be included in this collection of statements because that claim is edging on the side of being outlandish so if that's what you think happened please don't send your statements along.
>
> In your statements please include any info you have in terms of what time we reached the club . . . [and] how much Yog had to drink . . . .
>
> At this point there's about 5 statements collected by the police that night that claim Yog jumped and *the lawyer stressed the importance of us collecting at least 10-12 statements from our friends that say he DID NOT jump, but he FELL OVER the railing.*

> If you still have the statements that you emailed to me almost a year or two ago please edit according to the new direction we're going in and re-send those if you can.
>
> . . . .
>
> . . . The lawyer has already told us that without these statements our case doesn't stand much of a chance in court . . . .

E-mail from Sruti Patel (Aug. 21, 2010) (available in Defs.' Mot. Ex. R) (emphasis added; italics included in original).

The unmistakable conclusions reached from comparisons of the 2008 and 2010 messages are that:

- Sruti Patel was asking witnesses to change their accounts of what they observed;

- Statements that did not have favorable accounts of the events would not be "included" in the statements she was gathering; and

- Prior statements that may have contained a version not favorable to Plaintiff would be changed in that Sruti Patel requested they be "edit[ed] according to the new direction we are going in."

Neither the 2008 nor 2010 witness statements obtained by Sruti Patel were provided to Defense counsel during the initial disclosure discovery period. Thus, when Defense counsel began taking depositions of persons who were at Havana on the night in question, he had no knowledge of the messages sent by Sruti Patel or whether she had received any responses. According to Defendants, Plaintiff's counsel purposely withheld the responses to the messages until one of the witnesses acknowledged at her deposition that she had prepared and supplied a written statement to Sruti Patel. Only after this exchange was the witness's statement produced by Plaintiff's counsel, and going forward, Plaintiff's counsel provided the remainder of witness statements piecemeal, and

only immediately prior to each witness's deposition. This practice eventually stopped after Defense counsel contacted Chambers during a witness's deposition and Plaintiff's counsel was ordered to turn over all witness statements in his possession. According to Defense counsel, Plaintiff has since produced sixteen witness statements despite the fact that twenty statements exist.[2] It is undisputed that to date, Plaintiff has never produced any statements received in response to Sruti Patel's 2008 Facebook request for statements indicating that Plaintiff was not intoxicated. (Defs.' Mot. 2, 3-4.)

During her deposition, Sruti Patel testified that she was designated to send the 2008 message and constructed the language of the message herself. She claimed she did not have copies of the responses she received, but that hard copies were printed and given to the "old attorney." (Sruti Patel Dep., Nov. 4, 2010 11:11-17, 12:1-4.)

Plaintiff's wife, Atree Patel, conveyed a different version regarding the whereabouts of the 2008 statements. She testified at deposition that Sruti Patel pasted the 2008 Facebook responses into a Word document and forwarded them to her. Thereafter, Atree Patel printed the statements and gave them to Plaintiff's lawyer. However, Atree Patel later testified at the sanctions hearing that she "meant that [she] gave them to Yog[] and that he supposedly passed them on." Although Plaintiff originally stated in his deposition that he never saw any of the statements, he later testified at the sanctions hearing that he had possession of the 2008 statements at one time, but has since been unable to locate them. (Atree Patel Dep. 57:9-24; Defs.' Mot. Ex. O; Feb. 22, 2011 Sanctions Hr'g Tr.108, 120-23.)

---

[2] We note that Plaintiff turned over thirteen statements, one of which was a joint statement by two witnesses, on November 4, 2010. Plaintiff later produced two additional statements on December 8, 2010 in response to Defendants' discovery demand. (Defs.' Mot. 2; Doc. No. 37 at 3, n.1.)

In response to the conflicting testimony from Plaintiff and his family regarding the possession of the 2008 witness statements, Plaintiff's counsel has denied receipt of any such statements. Indeed, Plaintiff's counsel has submitted an affidavit stating that he does not remember ever receiving any statements responsive to Sruti Patel's 2008 Facebook request. In any event, regardless of who may or may not have had possession of the 2008 statements, none have ever been produced to Defendants. (McElroy Aff. ¶¶ 3-4; Defs.' Mot. 3.)

### C. The Police Report

On or about August 31, 2010, Plaintiff forwarded to Defendants initial disclosures which purported to comply with FED. R. CIV. P. 26(a). However, these initial disclosures failed to include a copy of the police report, which Plaintiff's counsel concedes was in his possession. The disclosures also did not identify seven witnesses to the incident who were identified in the police report. (Defs.' Mot. 8, 9; see Pl.'s Opp'n to Defs.' Mot. for Sanctions & Pl.'s Cross-Mot. for Sanctions 30.)

Plaintiff's counsel eventually produced the police report on November 4, 2010, more than two months after the initial disclosure period. However, the version produced by Plaintiff's counsel was incomplete, as it omitted two appended witness statements—both of which cast doubt on Plaintiff's theory that he fell, rather than jumped, over the balcony. Also omitted was a copy of Plaintiff's guest check from the second floor bar on the night of the incident. (Defs.' Mot. 9, Ex. V.)

## II. Discussion

As set forth above, the primary issues in the parties' motions for sanctions pertain to the destruction of video footage and the non-production of the 2008 witness statements, both of which can be characterized as spoliation issues. The remaining issues pertain to the withholding of the

2010 witness statements and the belated production and omissions in the police report.  We address the spoliation issues first.

### A.  Spoliation

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Mosaid Techs. Inc., v. Samsung Elecs. Co., Ltd., 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (internal quotation marks omitted).  When spoliation occurs, courts may impose sanctions on the offending party because a litigant has an affirmative duty to preserve evidence that it "knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation."  Id. at 336 (internal quotation marks omitted).  The duty to preserve applies even where the evidence is marked as privileged.  See Gutman v. Klein, 2008 WL 4682208, at *8, *12 (E.D.N.Y. Oct. 15, 2008) (finding spoliation occurred when evidence appearing on a privilege log, or which had been labeled as privileged, was destroyed).  Appropriate sanctions for spoliation include dismissal of claims, suppression of evidence, an adverse inference, fines, and attorneys' fees and costs.  Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110-11 (E.D. Pa. 2005).

#### 1.  Video Footage

Plaintiff argues that the erasure of Havana's video footage constitutes sanctionable spoliation. In support of his argument, Plaintiff alleges that Havana's manager, Ernie Santone, misrepresented to the police that the system was not functioning on the night of the incident.  Specifically, Plaintiff points out that the police report indicates that Santone told the police that the system was "down" when the police asked to see video footage, and thereafter, Defendants actively allowed the video to be destroyed.  Plaintiff further contends that the video's destruction resulted in needless witness

9

depositions because the video was "critical" evidence "that could, by itself, prove all of Plaintiff's claims in this case." (Pl.'s Opp'n to Defs.' Mot. for Sanctions & Pl.'s Cross-Mot. for Sanctions 28, 33.)

Defendants respond that they made a good faith effort to preserve the video surveillance footage. Specifically, Defendants allege that Havana's video system was incapable at the time of copying the video to a CD or DVD; Havana's owner, Mark Stevens, contacted the video system service provider to cure this problem; and that despite these good faith efforts, Defendants were unable to preserve the video footage before the system automatically recorded over it. In addition, Defendants argue that, even had the video been preserved, in all likelihood, witness depositions would still have been necessary. (Defs.' Resp. in Opp'n to Pl.'s Cross-Mot. for Sanctions 3, 6.)

We find that Defendants' failure to preserve the video surveillance footage constitutes spoliation. Given the circumstances of the accident, litigation was reasonably likely and thus Defendants had an affirmative duty to preserve the video evidence. Although Defendants appear to have taken some steps to copy the video within the three weeks before its automatic erasure, they failed to take reasonable alternative measures to preserve the footage. For instance, although Mark Stevens contacted the video system service provider two days after the incident regarding camera and printer issues, based on the record before us, he failed to timely make a follow-up call despite the fact that the issues were not resolved. In addition, Defendants failed to print still images of the footage in spite of the system's ability to do so.

**2. 2008 Witness Statements**

Defendants assert a claim of spoliation with respect to the 2008 witness statements. Defendants urge that Plaintiff and his attorneys, through Plaintiff's sister-in-law, "spoon-fed friendly

witnesses testimony that would support their case theories, and then lost or destroyed evidence that would not support their current case theory." Defendants contend that Sruti Patel's attempt to suggest the content of the statements strongly supports the inference that the non-produced, and possibly destroyed, statements were "willfully and strategically destroyed because they were adverse to Plaintiff's case." (Defs.' Br. 3.)

Plaintiff responds that the witness statements were protected from disclosure pursuant to the work product doctrine and thus they were under no obligation to retain or preserve the statements. Plaintiff also argues that Sruti Patel did not improperly manipulate the content of the statements, but rather "explained the subject matter Plaintiff was seeking . . . and requested the witnesses include in their statements, their own recollection of facts." (Pl.'s Opp'n to Defs.' Mot. for Sanctions & Pl.'s Cross-Mot. for Sanctions 20-21, 23-24.)

We find that Plaintiff's loss of the 2008 witness statements is clearly spoliation. In September of 2008, Sruti Patel requested witness statements from persons at Havana. She testified at the sanctions hearing that she received about 8 or 10 statements in response. (Feb. 22, 2011 Sanctions Hr'g Tr. 61-62.) While there is conflicting testimony from Plaintiff, his wife (Atree Patel), his sister-in-law (Sruti Patel) and Plaintiff's counsel regarding who had possession of these statements, it is clear that Plaintiff or his family at one time had possession of the statements, and thus had an affirmative duty to preserve them.

Plaintiff's counsel's claim of work product privilege does not obviate this duty. Even if the work product privilege did somehow come into play, this privilege was belatedly raised, and documents were withheld without ever notifying Defense counsel. This type of discovery practice is directly contrary to FED. R. CIV. P. 26(b)(5), which requires a party who withholds information

based on a claim of privilege to expressly raise that privilege and describe the nature of the withheld documents in a privilege log.

## B. Initial Disclosures

Defendants also contend that Plaintiff's withholding of the 2010 witness statements and the belated production and omissions in the police report are a violation of Plaintiff's Rule 26 obligations.[3]

Under Federal Rule of Civil Procedure 26(a)(1)(A), the parties must, without awaiting a discovery request, provide to the other parties, inter alia:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

FED. R. CIV. P. 26(a)(1)(A)(i)-(ii).

The purpose of voluntary disclosures is to streamline discovery by "forc[ing] parties to exchange their basic, substantive evidence, without resort to the complications, inefficiency, and litigiousness of discovery practice." McDaid v. Stanley Fastening Sys., LP, 2008 U.S. Dist. LEXIS 57844, at *4 (E.D. Pa. July 28, 2008). Initial disclosures also serve the purpose of thwarting a party from "improperly withholding relevant documents on the grounds that the opposing party has not

---

[3] We note that Plaintiff's cross-motion also alleges that Defendants failed to comply with their initial disclosure obligations, and asserts other violations related to Defendants' counsel's conduct regarding the scheduling and conduction of depositions. We find that these arguments either lack merit or do not warrant sanctions.

specifically asked for them." Tarlton v. Cumberland Cnty. Corr. Facility, 192 F.R.D. 165, 169 (D.N.J. 2000). The duty to voluntarily disclose does not cease after initial disclosures are made. Under Federal Rule of Civil Procedure 26(e), a party must supplement its initial disclosures where "the party learns in some material respect the disclosure . . . is incomplete or incorrect." FED. R. CIV. P. 26(e)(1)(A). In short, the federal discovery rules (FED. R. CIV. P. 26 - 37) "were carefully designed to structure the pretrial process in a way to move a case or controversy to resolution on the merits in the fewest and most efficient way possible." Tarlton, 192 F.R.D. at 169.

Defendants urge that Plaintiff's counsel was deliberately trying to "hide the ball" in withholding the 2010 statements in that Defendants did not learn of the statements until a deponent testified that she had supplied one. Defendants complain that, upon their request for such statements, Plaintiff's counsel belatedly claimed attorney-client privilege[4] then attempted to only disclose the statements piecemeal, prior to each witness's deposition. Defendants further note that Plaintiff's counsel did not produce all of the 2010 statements after the Court compelled them to do so, and to date, the 2008 statements have never been produced. Lastly, Defendants contend that Plaintiff's failure to produce the police report and identify relevant witnesses is also a violation of Plaintiff's Rule 26 obligations. (Defs.' Mot. 4, 10; Defs.' Br. 24, 33.)

Plaintiff responds that the witness statements did not have to be produced in initial disclosures because they are work product and hearsay. Moreover, Plaintiff claims that the oversight in not including the police report in his initial disclosures was unintentional, and the omissions in the report were a result of the fact that Plaintiff's counsel only possessed an incomplete copy of the

---

[4] We are at a loss to understand how statements provided by non-party individuals could constitute "attorney-client" material.

report. (Pl.'s Opp'n to Defs.' Mot. for Sanctions & Pl.'s Cross-Mot. for Sanctions 12-23, 30-32.)

We conclude that Plaintiff's counsel's conduct was improper and contrary to the purpose of Rule 26 initial disclosures. Plaintiff's counsel did not initially disclose the existence of the 2010 statements and then only did so when such statements were discovered through questioning at a deposition. Thereafter, counsel chose to provide the remainder of the statements just prior to each witness's deposition, leaving Defense counsel no opportunity to carefully review the statements and fully prepare for deposition questioning. This type of lawyering is directly at odds with the purpose of Rule 26, which was designed to "accelerate the exchange of basic information." McDaid, 2008 U.S. Dist. LEXIS 57844 at *4.

Whether Plaintiff is pursuing a premises liability and failure to warn claim (Plaintiff was not intoxicated) or he is alleging that Havana's staff continued to serve him alcohol (Plaintiff was intoxicated), eyewitness statements regarding the events in question are certainly "discoverable information" and may be used to support Plaintiff's claim. Put more directly, this is the type of "basic, substantive evidence" that should have been produced "without resort to the complications, inefficiency, and litigiousness of discovery practice." Id. Plaintiff should have known that the witness statements would eventually be discoverable under Rule 26(b)(3)(A), and that producing the statements piecemeal was not in any way designed to foster the fair and efficient exchange of information.

Plaintiff's "privilege" explanations also fall short. Both the 2008 and 2010 witness statements solicited by Sruti Patel are clearly discoverable because they are eyewitness accounts of the events in question, and Defendants surely could establish substantial need and undue hardship to overcome any work product privilege claim. See FED. R. CIV. P. 26(b)(3)(A) (stating that work

14

product materials may be discovered if the opposing party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."). Given the inconsistencies in Sruti Patel's requests, Defendants could, at a minimum, demonstrate that they had reason to believe that there could be an inconsistency between the deposition testimony and the information contained in the witness statements. See Gargano v. Metro-North, 222 F.R.D. 38, 40 (D. Conn. 2004) ("Substantial need may also exist if there is reason to believe that there is an inconsistency between the deposition testimony given by a witness and the information contained in the earlier statements of that witness.")

The fact that Plaintiff's counsel raises the work product privilege now, as a justification for the lack of production, only compounds their discovery violations. As noted previously, if information was going to be withheld, an obvious obligation follows to promptly notify Defense counsel and provide a privilege log. See FED. R. CIV. P. 26(b)(5).

We also find that Plaintiff's counsel's conduct in failing to produce the police report during initial disclosures, and in later omitting relevant portions of the report, violated Rule 26(a)(1)(A)(ii).

**C. Sanctions**

Rule 37 of the Federal Rules of Civil Procedure provides for a wide range of sanctions for a party's non-compliance with its discovery obligations, including discretion to deem facts as established, bar evidence, dismiss the action, order payment of reasonable expenses, and inform the jury of the party's failure to disclose or supplement. See FED. R. CIV. P. 37(c)(1), 37(b)(2)(A). The court has broad discretion in selecting the type and degree of sanction appropriate under the facts and circumstances. Bowers v. NCAA, 475 F.3d 524, 538 (3d Cir. 2007).

**1. Plaintiff's Request for Sanctions**

In his Cross-Motion, Plaintiff requests an adverse inference instruction, reasonable attorneys' fees and costs, and any other sanctions the Court deems appropriate.

**a. Adverse Inference Instruction**

We find that an adverse inference instruction is proper with respect to the destruction of the video surveillance evidence. An adverse inference, or spoliation inference, is imposed to "level[] the playing field" between the parties. Mosaid Techs. Inc., v. Samsung Elecs. Co., Ltd., 348 F. Supp. 2d 332, 335 (D.N.J. 2004). This sanction allows the trier of fact to "receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995). A spoliation inference should be imposed where: (1) the evidence in question was within the party's control; (2) there appears to have been actual suppression or withholding of the evidence; (3) the evidence in question was relevant to the claims or defenses; and (4) it was reasonably foreseeable that the evidence would be discoverable in litigation. Mosaid, 348 F. Supp. 2d at 336. There is no requirement that the spoliation be intentional; even "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference." Id. at 338.

Here, the spoliation inference is appropriate because the video footage was within Havana's exclusive control; the video was not preserved before its destruction because Defendants failed to follow through with the steps necessary to ensure preservation; the footage of the bar and the area in which Plaintiff fell on the night of the incident is clearly relevant to Plaintiff's claims; and Defendants knew or should have known that the footage would later be discoverable given their

knowledge of Plaintiff's injuries and the likelihood of suit. Defendants will of course be permitted to explain to the jury the steps they did take to preserve the footage.

We will impose no further sanctions as the only sanctionable conduct on the part of Defendants was the spoliation of the video evidence.

### 2. Defendants' Request for Sanctions

Defendants seek dismissal of Plaintiff's complaint with prejudice or, in the alternative, other appropriate sanctions, including: attorneys' fees and costs; an adverse inference instruction; a 60-day stay of proceedings for additional discovery; access to the computers and information technology servers used by Plaintiff's counsel; permission to re-depose five witnesses at cost to Plaintiff; permission to depose a designee of Sruti Patel's former and current employers and gain access to the respective employers' computers and servers, at cost to Plaintiff; access to all personal e-mail accounts maintained by Sruti Patel, Atree Patel, and Yogesh Patel; and exclusion of certain evidence related to the non-production of witness statements.

We agree with Defendant that the conduct of Plaintiff, Plaintiff's family and his counsel ran completely afoul of the goals of discovery, and thus we have seriously considered dismissal of Plaintiff's case. We are, however, unprepared to take such a drastic step and to deprive Plaintiff of his day in court on the merits, especially where alternative sanctions will sufficiently address the misconduct.[5]

---

[5] Dismissal is a drastic sanction and should be reserved for those cases with the "most egregious circumstances." U.S. v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 161 (3d Cir. 2003). In evaluating the propriety of dismissal as a sanction, courts must consider six factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the

### a. Adverse Inference Instruction

We first find that an adverse inference instruction is appropriate to address the spoliation of the 2008 witness statements. As discussed above, four factors must be satisfied for a spoliation inference to apply. See Mosaid, 348 F. Supp. 2d at 336. Here, all factors have been met. First, the 2008 witness statements were in Plaintiff or Plaintiff's family's possession prior to their disappearance. In addition, the statements have never been produced, and Plaintiff's conduct with respect to the statements, as well as the conduct of his wife and sister-in-law, is very suspect. Furthermore, the statements are relevant as they are witness accounts of the night in question. Lastly, it was reasonably foreseeable that the statements would later be sought in discovery given that witness testimony as to Plaintiff's appearance is crucial to his claim.

We believe the best way to sort out Plaintiff's discovery misconduct is to allow the jury to draw its own conclusions as to the evidentiary value of how the evidence was handled. We stress that great latitude will be given to Defense counsel to fully develop the sequence of events surrounding Sruti Patel's solicitation of witness statements, and the inconsistencies in her 2008 and 2010 Facebook/e-mail requests. We also reject the frivolous and ridiculous argument made by Plaintiff that, in seeking witness statements in 2008 and 2010, Sruti Patel was merely explaining to witnesses "the subject matter Plaintiff was seeking."

---

meritoriousness of the claim or defense. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). Although each factor need not be satisfied for the trial court to dismiss the case, "any and all doubts should be resolved in favor of reaching a decision on the merits." Wirerope Works, Inc. v. Travelers Excess & Surplus Lines Co., 2008 WL 2073375, at *3 (E.D. Pa. May 12, 2008).

### b. Re-Deposition of Witnesses at Cost to Plaintiff

In addition, given the manner in which Plaintiff produced the 2010 witness statements, and the spoliation of the 2008 witness statements, we will allow Defendants to re-depose, at cost to Plaintiff, the following witnesses: Mukti Patel, Anish Shah, Raman Nijhawan, Shaheen Nijhawan, and Umar Anjum. Plaintiff shall pay for the court reporter, and upon completion of the depositions, Defendants shall submit to the Court a reasonable request for attorneys' fees.

### c. Attorneys' Fees and Costs

We will also award Defendants' attorneys' fees and costs for the time and effort they expended in attempting to obtain discovery that they were entitled to receive. This shall include fees and costs incurred as a result of Defendants' efforts to obtain the 2008 witness statements and any fees or costs related to the belated production of the 2010 statements and police report, including the sanctions hearing and motions practice before this Court. Defendants have submitted an itemization of these fees and costs totaling approximately $20,000 and initially, this request appears to be reasonable. As set forth in the accompanying Order, we will not impose a specific sanction amount until Plaintiff's counsel has had an opportunity to be heard on Defendants' itemization.

### d. No Additional Sanctions

We decline to impose the additional sanctions requested by Defendants. However, we note that if Defendants would like to pursue discovery related to the retention of documents by Sruti Patel's current and former employers, they may do so at their own expense.

## III. Conclusion

For the reasons set forth above, both parties' motions for sanctions are **GRANTED** in part and **DENIED** in part. An appropriate Order follows.